UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY NAVARRETTE,<br><br>   Plaintiff,<br><br>v.<br><br>ROBIN WREN,<br><br>   Defendant. | Case No.:  3:22-cv-0006-LL-AHG<br><br>**REPORT AND RECOMMENDATION RECOMMENDING THE COURT GRANT DEFENDANT'S MOTION TO DISMISS**<br><br>[ECF No. 26] |

Before the Court is the Motion to Dismiss Plaintiff's Complaint for failure to state a claim, filed by Defendant Special Agent Robin Wren of the Department of Homeland Security Homeland Security Investigations ("Defendant") on January 24, 2023. ECF No. 26. Defense counsel filed a Certificate of Service the same day, establishing that Plaintiff was served with the Motion to Dismiss via First Class U.S. Mail. ECF No. 27. Plaintiff has failed to respond to the Motion to Dismiss, despite being given ample notice of the motion as well as a *sua sponte* extension of the response deadline. *See* ECF No. 31. In light of the Court's Order of Referral (ECF No. 30), this Report and Recommendation is submitted to United States District Judge Linda Lopez pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1(a) of the United States District Court for the Southern District of California. After reviewing the Motion to Dismiss and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** the Motion, and **DISMISS** this action with prejudice.

## I.   BACKGROUND

Plaintiff, who is proceeding *pro se*, first filed this action on January 4, 2022. ECF No. 1. At the time, Plaintiff was incarcerated at the Santa Rita Jail, and the Court denied his motion to proceed *in forma pauperis* ("IFP") for failing to attach his inmate account statement for the 6-month period immediately preceding the filing of his Complaint and dismissed the action without prejudice for failure to pay the filing fee. *See* ECF No. 4. Plaintiff renewed his motion to proceed IFP and notified the Court that he was no longer incarcerated on February 11, 2022. ECF No. 5. After reviewing the renewed IFP motion, the Court granted Plaintiff leave to proceed IFP and found that his Complaint stated a plausible claim under the Fourth Amendment for false arrest against the individual defendants Jane Doe 1 and Jane Doe 2 sufficient to survive the "low threshold" for *sua sponte* screening under 28 U.S.C. § 1915(e)(2) and § 1915A(b). ECF No. 6 at 5-6. However, the Court required Plaintiff to identify the Doe Defendants and substitute those individual persons as parties before permitting Plaintiff's claims to proceed, and granted Plaintiff leave to amend his pleading to name the individual officers. *Id.* at 6-7.

Plaintiff filed the operative First Amended Complaint ("FAC") on March 25, 2022, naming Special Agent Robin Wren as an individual Defendant. ECF No. 7. In the FAC, Plaintiff alleges that on January 10, 2020, he traveled from Los Angeles, California to Tijuana, Mexico "to get some dental work completed and to visit some friends." *Id.* ¶ 7. While in Tijuana, Plaintiff alleges that he "accidentally took the wrong freeway and ended up in the Sentry line to [] cross back to the U.S.[,]" presumably at the San Ysidro Port of Entry. *Id.* ¶¶ 7-8. Plaintiff states that he had 14 grams of medical-grade marijuana and black organic African soap in the trunk of his vehicle. *Id.* ¶ 7. Plaintiff states that, after speaking to a border patrol agent, he was sent to secondary inspection, where agents located the marijuana and told him that he would be cited and released within approximately one hour. *Id.* ¶ 8. Plaintiff alleges he was "handcuffed to a metal bench where he sat for 8 hours waiting to be cited for the marijuana[,]" and after approximately 8 hours, Defendant Special Agent Robin Wren took Plaintiff into an interview room and began to interrogate him about the substance in the trunk that Plaintiff identifies as black organic African soap. *Id.* According to the FAC, Plaintiff was unsure what substance Defendant was referring to and was not able to answer her questions, and he was consequently "abruptly arrested and transported to MCCSD where he was booked and arrested for possession of MDMA and attempting to transport a controlled substance across the border into the U.S." *Id.*

According to the FAC, the charges against Plaintiff were eventually dismissed on February 5, 2020 after testing showed that the soap from his trunk did not contain any controlled substances, and he was released from jail. *Id.* ¶ 11. Plaintiff alleges that the substance "never tested positive for MDMA or characteristics of MDMA[,]" and accuses Defendant Wren of falsifying the initial field test of the substance showing that it tested positive for MDMA and "manufacturing" the probable cause statement she submitted in support of Plaintiff's arrest. *Id.* ¶¶ 10-12.

Plaintiff alleges that while he was illegally detained for 21 days between January 10 and January 31, 2020, his 2014 Toyota Prius (valued at approximately $14,000) was seized and auctioned off, his United States passport (valued at approximately $150) and iPhone 8

(valued at approximately $900) were either misplaced or stolen by Defendant Wren, his 16-year-old daughter was displaced from the apartment she shared with Plaintiff and became homeless, and Plaintiff suffered lost wages in the amount of $2,000. *Id.* ¶¶ 12-13. Plaintiff further states that due to the stress of the situation, he suffered a bipolar manic episode that lasted 4 months, during which he lost his apartment and ultimately ended up in the San Francisco area, where he was involved in a physical altercation that led to another arrest and a two-year incarceration in the Santa Rita Jail. *Id.* ¶ 13. Plaintiff attributes his incarceration in the Santa Rita Jail to the incident underlying this case on the basis that it triggered his manic episode, and contends that he also experienced cruel and unusual punishment while in the Santa Rita jail. *Id.* ¶ 14. Based on these allegations, Plaintiff contends that Defendant Wren violated his Fourth, Fifth, and Fourteenth Amendment rights under the Constitution as well as his due process rights under the California Constitution. *Id.* ¶¶ 15-20.

On May 16, 2022, upon screening of the FAC, the Court found that Plaintiff stated a plausible claim against Defendant Wren for false arrest pursuant to the Fourth Amendment and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), sufficient to survive screening under 28 U.S.C. § 1915(e)(2). ECF No. 9 at 3-4. The Court accordingly ordered the U.S. Marshal Service to effect service on Defendant Wren and required her to file a responsive pleading to the FAC. *Id.* at 4-5.

Defendant filed the instant Motion to Dismiss on January 24, 2023, arguing that Plaintiff's constitutional claims present unwarranted extensions of *Bivens*, that Plaintiff's state constitutional claim is precluded by law, and that Defendant is entitled to qualified immunity. ECF No. 26.

To date, Plaintiff has failed to file a response to the Motion to Dismiss, despite being given a *sua sponte* extension of time to do so and being warned that failure to do so could properly be construed as consent to grant the motion. *See* ECF No. 31; *see also* CivLR 7.1.f.3.c (explaining that the non-moving party's failure to file an opposition to a motion "may constitute a consent to the granting of a motion"); *Ghazali v. Moran*, 46 F.3d 52, 54

(9th Cir. 1995) (upholding a lower court's application of a similar Local Rule, and finding that a motion to dismiss may be granted as unopposed where a pro se litigant fails to file any response because "pro se litigants are bound by the rules of procedure"). Nonetheless, the undersigned recommends that the Court address Defendant's Motion to Dismiss on the merits, rather than granting the motion based solely on Plaintiff's failure to respond.

## II.   LEGAL STANDARD

Generally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this assessment, the Court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Turner v. City and Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015). Although the Rule 8 pleading standard does not require "detailed factual allegations," it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To state a facially plausible claim, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "facial plausibility" standard is not akin to a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In this case, Defendant's Motion to Dismiss presents an antecedent legal question that the Court should address before turning to whether the complaint contains a facially plausible claim that Defendant violated Plaintiff's constitutional rights. Namely, although the FAC purports to bring claims against Defendant under 42 U.S.C. § 1983, since Defendant is a federal agent, Plaintiff's constitutional claims arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999) ("Section 1983 [] provides

no right of action against federal (rather than state) officials."); *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*."). Because Plaintiff's claims arise under *Bivens*, which gives courts limited authority to create causes of action against federal actors, the Court must first determine whether a judicially-created cause of action may lie under *Bivens* at all.

In *Bivens*, the Supreme Court "held that it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (quoting *Bivens*, 403 U.S. at 397). In the *Egbert* decision, the Court explained that in the approximately 50 years since *Bivens* was decided in 1971, it had "twice again fashioned new causes of action under the Constitution" against federal actors—first, for a congressional staffer's Fifth Amendment sex-discrimination claim in *Davis v. Passman*, 442 U.S. 228 (1979), and second, for a federal prisoner's Eighth Amendment claim for cruel and unusual punishment against federal jailers for inadequate medical care in *Carlson v. Green*, 446 U.S. 14 (1980)—but had otherwise "not implied additional causes of action under the Constitution." *Egbert*, 142 S.Ct. at 1802 (citations omitted). Moreover, the *Egbert* Court made clear that "[a]t bottom, creating a cause of action is a legislative endeavor[,]" and accordingly, "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 1802, 1803 (quotations and citation omitted). Indeed, reviewing its own precedent, the Supreme Court explained just how rarely a *Bivens* action should lie:

> When asked to imply a Bivens action, "our watchword is caution." [*Hernández v. Mesa*, 140 S. Ct. 735, 742 (2020)]. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [it]." *Ziglar* [*v. Abbasi*, 582 U.S. 120, 137 (2017)]. "[E]ven a single sound reason to defer to Congress" is enough to require a court to refrain from creating such a remedy. *Nestlé USA, Inc. v. Doe*, [] 141 S. Ct. 1931, 1937 [] (2021) (plurality opinion). Put another way, "the most important question is who should decide whether to provide

      for a damages remedy, Congress or the courts?" *Hernández*, [] 140 S. Ct. at 750 (internal quotation marks omitted). If there is a rational reason to think that the answer is "Congress"—as it will be in most every case, *see Ziglar*, [582 U.S. at 135-36]—no Bivens action may lie.

*Egbert*, 142 S. Ct. at 1803.

      Therefore, when faced with a *Bivens* action, the first step of the Court's analysis is whether fashioning a judicial cause of action would require extending *Bivens* to a new context. A "new context" is one that is "different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 582 U.S. at 139. In making this assessment, the Court is limited to examining only the three cases in which the Supreme Court has found an implied judicial cause of action against federal actors—i.e., *Bivens*, *Davis*, and *Carlson*—and should not examine *Bivens* cases in lower courts. *Egbert*, 142 S. Ct. at 1803; *Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023).

      Second, whenever a plaintiff's claims against a federal agent present a new *Bivens* context, the action may not lie if there is "even a single sound reason" to think that Congress is better-equipped to provide for a damages remedy than the federal courts. *Egbert*, 142 S. Ct. at 1803. "[I]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id*. at 1800; *see also, e.g.*, *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) ("Under *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly. The creation of a new cause of action is inherently legislative, not adjudicative.").

      Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Therefore, the antecedent *Bivens* inquiry of "whether to allow an action for money damages in the absence of congressional authorization" may appropriately be addressed at the motion to dismiss stage, prior to addressing whether the complaint contains a plausible claim that the plaintiff suffered a constitutional violation or whether qualified immunity applies. *See Ziglar*, 137 S. Ct. at 1869; *see also Marquez v. Rodriguez*, No. 3:18-CV-0434-CAB-NLS, 2021 WL 2826075,

at *13 (S.D. Cal. July 6, 2021) (noting that "a court may determine on a motion to dismiss whether a plaintiff *can in fact* proceed under *Bivens* when that question is 'antecedent' to the issue of qualified immunity") (citation omitted). In performing this inquiry, however, the Court must still apply the familiar 12(b)(6) standard—that is, the Court must accept all the facts alleged in the complaint as true, and the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Balistreri*, 901 F.2d at 699.

### III. DISCUSSION

In the Motion to Dismiss, Defendant argues that Plaintiff's federal constitutional claims should be dismissed because they represent an unwarranted extension of the *Bivens* remedy in a new context. ECF No. 26 at 4-8. Additionally, Defendant argues that she is entitled to immunity against Plaintiff's state constitutional claim that she violated his due process rights under the California Constitution. *Id.* at 8-9.

Notably, in the Court's Order screening Plaintiff's FAC, the Court found only that Plaintiff stated a "plausible Fourth Amendment false arrest claim against Defendant Wren sufficient to survive the 'low threshold' set for *sua sponte* screening as required by 28 U.S.C. § 1915(e)(2)." ECF No. 9 at 4. Therefore, it appears only Plaintiff's Fourth Amendment claim survived screening, and thus no other claims in the FAC remain at issue. Nonetheless, in an abundance of caution, the undersigned will address Plaintiff's state constitutional claim before turning to its *Bivens* analysis of the federal constitutional claims in the FAC.

#### A. **Plaintiff's state constitutional claim against Defendant Wren**

In the second cause of action in his FAC, Plaintiff relies on Article 1, Section 7(a) of the California Constitution, which provides that "[a] person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws[.]" Cal. Const. art. I, § 7(a). Plaintiff alleges that Defendant Wren violated his rights under this provision "by her actions of illegally arresting, unlawfully detaining plaintiff without probable cause as well as through falsifying a test on the [black organic African soap,] then

amending her probable cause statement to state 'characteristics' of MDMA." ECF No. 7 ¶¶ 16-17. Based on these allegations, Plaintiff claims that Defendant violated his due process rights under the California Constitution because her actions "resulted in deprivation of plaintiff's life, liberty, and property." *Id.* ¶ 18. As a remedy, Plaintiff seeks (1) a declaratory judgment that Defendant violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and the California Constitution Article 1, Section 7(a), (2) a nominal judgment in the amount of $1.00, and (3) an award of compensatory and punitive monetary damages in amounts to be determined at trial. *Id.* at 12.

As an initial matter, in an extensive and detailed opinion, the California Supreme Court has held that Article 1, Section 7(a) does not create a private right of action for damages. *Katzberg v. Regents of Univ. of California*, 58 P.3d 339, 342-58 (Cal. 2002). Therefore, to the extent Plaintiff is attempting to bring a claim for monetary damages directly under that provision of the California Constitution, it must be dismissed.[1]

Further, to the extent Plaintiff's claims against Defendant could be construed as state-law tort claims, as Defendant Wren argues in her Motion to Dismiss, she enjoys broad immunity from state tort claims under the Westfall Act. ECF No. 26 at 8 (citing *United States v. Smith*, 499 U.S. 161, 163 (1991)); *see also* Westfall Act, codified in various

---

[1] Although California does not recognize a private right of action under Article 1, Section 7(a) of the California Constitution, plaintiffs alleging such violations may under certain circumstances bring suit under the Tom Bane Civil Rights Act, section 52.1 of the California Civil Code, which is "the California state law analog to section 1983." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1167 (9th Cir. 2013). However, to prevail on such a claim, he would have to allege that Defendant not only violated his rights under the California Constitution, but also that she did so using "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(b)-(c); *Jones v. Kmart Corp.*, 949 P.2d 941, 943-44 (Cal. 1998). Plaintiff has made no such allegations in the FAC that Defendant engaged in threats, intimidation, or coercion, nor has he made any attempt to state a cause of action under the Bane Act. Therefore, the potential availability of this private cause of action for state constitutional violations does not change the analysis.

subsections of 28 U.S.C. §§ 2671, 2674, 2679. Under the Westfall Act, the "exclusive" remedy for claims for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any federal employee acting within the scope of their employment, is to bring an action under the Federal Tort Claims Act. 28 U.S.C. § 2679(b)(1). "Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee [] is precluded without regard to when the act or omission occurred." *Id.* The statute provides two exceptions to the exclusive remedy provision, stating that it does not apply to a civil action against a federal employee (A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized. *Id.* § 2679(b)(2)(A)-(B). Therefore, because Defendant is a federal employee who was acting within the scope of her employment as an HSI special agent when engaging in the conduct alleged in the FAC, Plaintiff's state-law claims for money damages against her must be dismissed.

That leaves the question of whether Plaintiff's claim for a declaratory judgment that Defendant violated his rights under the California Constitution may proceed. As explained by the California Supreme Court in *Katzenberg*, although there is no private right of action for damages available under Article 1, Section 7(a) of the California Constitution, declaratory or injunctive relief may yet be available. *See* 58 P.3d at 355-56. However, the FAC at hand does not present an appropriate basis for the Court to grant a declaratory judgment. The purpose of a declaratory judgment is to offer "a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so*." Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (internal quotations and citations omitted). Thus, declaratory judgment actions "are justiciable if 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting

*Nat'l Basketball Ass'n v. SDC Basketball Club*, 815 F.2d 562, 565 (9th Cir. 1987)). In other words, past acts cannot be the basis for declaratory judgment. *Cotton v. Bashant*, No. 18-CV-325 TWR (DEB), 2021 WL 4942709, at *3 (S.D. Cal. Oct. 22, 2021). *See also John M. Floyd & Assocs., Inc. v. First Imperial Credit Union*, No. 16-CV-1851 DMS (WVG), 2017 WL 4810223, at *5 (S.D. Cal. Oct. 25, 2017), *aff'd*, 771 F. App'x 840 (9th Cir. 2019) ("A declaratory judgment is not a corrective action, and therefore, it should not be used to remedy past wrongs."). Where, as here, Plaintiff does not seek to "define the legal rights and obligations of the parties in anticipation of some future conduct," but rather seeks to "proclaim liability for a past act[,]" no claim for declaratory relief can stand. *See Couch v. Morgan Stanley & Co.*, No. 1:14-CV-0010 LJO JLT, 2014 WL 1577463, at *7 (E.D. Cal. Apr. 18, 2014) (quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)). Accordingly, to the extent Plaintiff's claim against Defendant Wren arising under the California Constitution survived screening in the first instance, the undersigned recommends that the Court grant Defendant's motion to dismiss it at this juncture.

### B. Plaintiff's federal constitutional claims against Defendant Wren

The Court now turns to the *Bivens* inquiry governing Plaintiff's remaining federal constitutional claims.

In determining whether a *Bivens* action may lie under the factual circumstances presented by Plaintiff's FAC, the Supreme Court's decision in *Egbert* is directly on point and must control the Court's analysis. Specifically, *Egbert* involved a Fourth Amendment excessive force claim and First Amendment retaliation claim against a Border Patrol agent, sued in his individual capacity. *See* 142 S. Ct. at 1800-02. The Supreme Court found that the Ninth Circuit Court of Appeals below "plainly erred" by creating causes of action for the plaintiff's claims against the agent, on the grounds that "Congress is better positioned to create remedies in the border-security context" than are the courts, and "the Government already has provided alternative remedies that protect plaintiffs" like the one in *Egbert*. *Id.* at 1804. In reaching this conclusion, the *Egbert* court relied in part on its earlier decision in *Hernández v. Mesa*, 140 S. Ct. 735 (2020), which also dealt with an excessive-force

claim against a Border Patrol agent. In *Hernández*, the Court refused to create a new federal cause of action under *Bivens* because "regulating the conduct of agents at the border unquestionably has national security implications," and the "risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." 140 S. Ct. at 747. The *Egbert* Court explained that the same "reasoning applies here with full force" because, during the alleged altercation with the plaintiff, "Agent Egbert was carrying out Border Patrol's mandate to 'interdic[t] persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States.'" 142 S. Ct. at 1804. (quoting 6 U.S.C. § 211(e)(3)(A)). Thus, "[b]ecause '[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention,' we reaffirm that a *Bivens* cause of action may not lie where, as here, national security is at issue." *Egbert*, 142 S. Ct. at 1804-05 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). Reversing the Court of Appeals, the Supreme Court emphasized that the *Bivens* inquiry requires the Court to answer "only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed" and expressly stated that "the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate." *Egbert*, 142 S. Ct. at 1805 (emphasis in original).

Additionally, the Supreme Court explained that Congress had provided alternative remedies for the plaintiff, by requiring the United States Border Patrol to investigate "[a]lleged violations of the standards for enforcement activities" and to accept grievances from "[a]ny persons wishing to lodge a complaint." *Id.* at 1806 (citing 8 C.F.R. §§ 287.10(a)-(b)). Although the plaintiff in *Egbert* complained that this grievance process was inadequate because he was not entitled to participate and had no right to judicial review of an adverse determination, the Court explained that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy[,] even if a court independently concludes that the Government's procedures are

not as effective as an individual damages remedy." 142 S. Ct. at 1807 (internal quotations and citation omitted).

Similarly, here, Plaintiff's claims all arise in the context of border patrol security, where Defendant Special Agent Robin Wren was carrying out national-security duties with the Department of Homeland Security ("DHS") as an agent for Homeland Security Investigations ("HSI"). In the statute establishing DHS, Congress provided that part of the Department's "primary mission" is to "monitor connections between illegal drug trafficking and terrorism, coordinate efforts to sever such connections, and otherwise contribute to efforts to interdict illegal drug trafficking." 6 U.S.C. § 111(b)(1)(H). As noted by Defendant in her Motion, HSI is considered the "principal investigative arm" of DHS, with "authority to conduct federal criminal investigations into the illegal cross-border movement of people, goods, money, technology and other contraband throughout the United States." ECF No. 26 at 3 (quoting *Homeland Security Investigations*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/about-ice/homeland-security-investigations (last updated April 14, 2023)). Therefore, the facts underlying Plaintiff's claims against Defendant for her role in investigating the nature of the substance in his trunk at secondary inspection station of the border port of entry, and in preparing the probable cause statement leading to his arrest and prosecution, directly involve issues of national security. The Supreme Court has directed that "a *Bivens* cause of action may not lie where [] national security is at issue." *Egbert*, 142 S. Ct. at 1805. For that reason alone, the Court should grant Defendant's Motion to Dismiss.

Moreover, Congress has provided for alternative remedies for the harms alleged by Plaintiff here. Specifically, with respect to Plaintiff's claim that Defendant falsified the field test results showing that the substance in his trunk tested positive for MDMA, the Department of Homeland Security is required to investigate any such alleged violations of the standards for enforcement activities pursuant to 8 C.F.R. § 287.10(a)-(b)—the same regulation discussed in *Egbert*. Pursuant to that regulation, "alleged violations of the standards for enforcement activities established in accordance with the provisions of

§ 287.8 shall be investigated expeditiously consistent with the policies and procedures of [DHS]." 8 C.F.R. § 287.10(a). Any person wishing to lodge a complaint that an officer has violated the enforcement standards set out in § 287.8 may contact the DHS Office of the Inspector General by mail or by phone to do so. 8 C.F.R. § 287.10(b). Section 287.8, in turn, applies to "every immigration officer involved in enforcement activities" and provides in pertinent part that "[a]n arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States" 8 C.F.R. § 287.8(c)(2)(i). Therefore, under these regulations, Plaintiff could report the facts underlying his false arrest claim against Defendant Wren by lodging a complaint with DHS that she falsified the results of the field test and included false information in the probable cause statement to justify his arrest, which would trigger an investigation.

Further, with respect to Plaintiff's claim that Defendant falsified or manufactured the information in the probable cause statement supporting Plaintiff's arrest, the Hyde Act provides for the payment of reasonable attorney fees and other litigation expenses to criminal defendants who prevail against vexatious, frivolous, or bad-faith prosecutions. Pub. L. No. 105–119, 111 Stat. 2440 (1997). *See also Sheikh v. U.S. Dep't of Homeland Sec.*, No. 2:22-CV-00409 WBS AC, 2022 WL 16964105, at *4 (E.D. Cal. Nov. 16, 2022) (relying on both 8 C.F.R. § 287.10(a)-(b) and the same section of the Hyde Act to find that there were existing remedies available to address the alleged misconduct of HSI special agent defendants). The *Sheikh* court faced very similar allegations to those at hand in the present case—namely, the plaintiff there claimed that two HSI special agents conducted a warrantless check on her property and later obtained a search warrant for the property based on information they knew to be false. 2022 WL 16964105, at *2. Based on the evidence allegedly falsified by the HSI agents, the plaintiff's "property was searched, she was indicted and held in jail for several hours, her reputation in the community was destroyed, and she suffered severe emotional distress." *Id.* Although the *Sheikh* court expressed "deep concern with the actions of" the HSI agents, and agreed with the plaintiff "that the judiciary

may have an interest in enforcing a remedy for fabrication of evidence in a criminal case, which directly affects the integrity of the judicial process[,]" the court nonetheless declined to imply a cause of action under *Bivens* because "Congress [] is much better equipped than the courts to fashion a remedy tailored to address this particular concern." *Id.* at *2, *5.

The Court should apply the same analysis here. Even assuming the facts of Plaintiff's FAC to be true—i.e., that Defendant Special Agent Wren fabricated the field test results showing that the soap in Plaintiff's trunk tested positive for MDMA, and later provided false information in the probable cause statement that led to Plaintiff's arrest and prosecution—the Court is not in a position to fashion a new cause of action under *Bivens* to address that misconduct. As explained in *Egbert*, "Congress is better positioned to create remedies in the border-security context" than are the courts, and "the Government already has provided alternative remedies that protect plaintiffs" who are the victims of false arrest and prosecution at the hands of federal agents charged with maintaining border security. *Id.* at 1804. *See also Sheikh*, 2022 WL 16964105, at *5-*6.

Based on the foregoing analysis, the undersigned recommends that the Court dismiss Plaintiff's federal claims in the FAC for failure to state a cognizable legal theory, because no *Bivens* action may lie against Defendant Special Agent Wren under the facts alleged. *See Balistreri*, 901 F.2d at 699 (explaining that dismissal is proper under Rule 12(b)(6) for failure to state a cognizable legal theory); *Ziglar*, 137 S. Ct. at 1869 (dismissing detention policy claims under *Bivens* at the motion to dismiss stage, on the basis that special factors counseled against extending the *Bivens* remedy to the new context presented by the claims); *Egbert*, 142 S. Ct. at 1804-05 (explaining that regulating the conduct of agents at the border "unquestionably has national security implications," and reaffirming that the *Bivens* remedy may not be extended to any context where "national security is at issue.") (quotations and citation omitted).

\\
\\
\\

### IV. CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant's Motion to Dismiss (ECF No. 26) in its entirety, and **DISMISS** this action with prejudice.[2]

The Court submits this Report and Recommendation to United States District Judge Linda Lopez under 28 U.S.C. § 636(b)(1). Any party to this action may file written objections with the Court and serve a copy on all parties no later than **May 25, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS SO ORDERED**.

Dated: May 11, 2023

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[2] Because Plaintiff's FAC should be dismissed on the basis that he has failed to state either a cognizable state constitutional claim under state law or a cognizable federal constitutional claim under *Bivens*, the undersigned does not reach Defendant's qualified immunity argument.